**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| CENTURY 21 REAL ESTATE, L.L.C., | : | |
| | : | |
| Plaintiff, | : | **OPINION** |
| | : | |
| v. | : | Civ. No. 08-1997 (WHW) |
| | : | |
| MILLS FIRST, INC., | : | |
| | : | |
| Defendant, | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |

**Walls, Senior District Judge**

Plaintiff Century 21 Real Estate, L.L.C. ("Century 21") moves for final judgment by default, pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, against Defendant Mills First, Inc. ("Mills First") for violations of the Lanham Act and for breach of certain franchise agreements entered into between Century 21 and Mills First ("the Franchise Agreements" or "the Agreements"). Pursuant to Rule 78 of the Federal Rules of Civil Procedure, Century 21's motion is decided without oral arguments. The motion is granted.

**I. Introduction**

Century 21 is a Delaware corporation with its principal place of business in New Jersey. (Compl. ¶ 1.) Mills First is a corporation with its principal place of business in Florida. (Compl. ¶ 2.) This Court has subject matter jurisdiction over the parties based on diversity of citizenship. 28 U.S.C. § 1332. This Court has personal jurisdiction over the parties under Section 25(A) of

NOT FOR PUBLICATION

the Franchise Agreements, which provides that Mills First consents to the personal jurisdiction of

this Court.  (Compl. Exs. A-G.)  Venue is also proper in this Court pursuant to Section 25A of

the Agreements.  (Id.)

On April 23, 2008, Century 21 filed a Complaint against Mills First and Sharon Mills,

alleging that Mills First and Sharon Mills had violated the Franchise Agreements between the

parties by terminating Century 21 franchises before their expiration dates, and had violated the

Lanham Act by engaging in unlawful use of Century 21 names, symbols, and marks.  Century 21

sought (i) injunctive relief and infringement damages under the Lanham Act, (ii) a judgment

allowing Century 21 to audit Mills First's books and records and ordering Mills First to account

for unpaid revenues and fees discovered as a result of the audit, (iii) breach of contract damages

for violation of the Franchise Agreements, (iv) guaranties damages against Sharon Mills, and (v)

unjust enrichment damages for violation of the Franchise Agreements.  Only the First, Second,

and Third Counts are now before the Court.[1]

Mills First and Sharon Mills were served with process, but failed to answer or otherwise

plead with respect to the Complaint as required by Rule 12(a) of the Federal Rules of Civil

Procedure.  On July 17, 2008, the Clerk of the Court entered default against Mills First and

Sharon Mills.  Following Sharon Mills' June 18, 2008 filing of a suggestion of bankruptcy upon

the record, Century 21 voluntarily dismissed Sharon Mills as a Defendant.  On January 8, 2009,

---

[1] The Fourth Count of the Complaint, guaranties damages against Sharon Mills, is now
moot because Century 21 has dismissed Sharon Mills as a Defendant.  The Fifth Count of the
Complaint, unjust enrichment for the failure to pay franchise fees, appears to be duplicative of
the Third Count, which seeks breach of contract damages for failure to pay franchise fees.
(Bertet Supp. Aff. ¶ 6.)  The Court therefore decides only First, Second, and Third Counts.

**NOT FOR PUBLICATION**

Century 21 filed a Motion for Final Judgment and Permanent Injunction by Default as to Mills First, Inc. In addition to injunctive relief and damages, Century 21 also sought attorneys' fees pursuant to the terms of the franchise agreements.

By letter dated August 31, 2009, this Court indicated that it was prepared to grant default judgment on the issue of liability, but requested further clarification regarding damages sought by Century 21. The Court directed Century 21 to submit supplemental papers on this issue by September 18, 2009, and to exclude from its calculations any pre-judgment interest that would have accrued after February 18, 2009, the original return date of the motion. Century 21 obtained an extension of time to submit its papers until September 25, 2009, and ultimately submitted its papers on September 28, 2009.

The Court notes that, despite its submission of supplemental papers for the sole purpose of clarifying the amount of damages it claims, Century 21 has provided disorganized, inaccurate, poorly annotated, and generally unclear documentation in support of the relief it seeks. Moreover, as detailed further, Century 21 has contradicted itself with regard to important and obvious facts, such as the commencement and termination dates of the Franchise Agreements it entered into with Mills First, and the time remaining between the early termination and the scheduled expiration of the Franchise Agreements – dates that clearly affect the amount of damages Century 21 is claiming.

These types of errors on the part of Century 21 and its counsel are troubling, as they suggest a lack of care that is particularly problematic when it finds expression in court documents signed by attorneys (such as the Verified Complaint and its exhibits) and court documents sworn

-3-

**NOT FOR PUBLICATION**

to and signed by non-attorneys (such as the motion papers, which included the Affidavit of

Jacqueline Bertet, and the supplemental papers, which included the Supplemental Affidavit of

Ms. Bertet).  These types of errors also suggest a lack of diligence that may stem from Century

21's mistaken belief that it need not submit thorough and accurate papers to the Court if its

adversary has not appeared and challenged its factual assertions.  However, the Court grants

Century 21 the benefit of the doubt and assumes that these errors – though they are numerous and

significant – are the result of carelessness rather than deliberate misrepresentation, and does not

review Century 21's papers under Rule 11.

The Court has considered the materials submitted by Century 21 and now decides the

issues of liability and damages.

## II. Factual Background

Between 1998 and 2000, Century 21 entered into six Franchise Agreements with Mills

First, each of which provided that Mills First would operate a real estate brokerage office in

Florida as a Century 21 franchise.  (Compl. Exs. A-F.)

### A. The Six Franchises

The six franchises were located in six Florida cities: St. Pete Beach, St. Petersburg,

Clearwater, New Port Richey, Largo, and Tarpon Springs.  (Compl. Exs. A-F.)  For the purpose

of this motion, the six franchise offices are designated by number in accordance with the

numbers assigned to them in Century 21's supplemental papers (see Bertet Supp. Aff.), although

their locations are stated accurately here: Office 0002 is St. Pete Beach, Office 0003 is St.

NOT FOR PUBLICATION

Petersburg,[2] Office 0004 is Clearwater, Office 0005 is New Port Richey, Office 0006 is Largo, and Office 0007 is Tarpon Springs.

The Court notes that its attempts to ascertain the locations of the franchise offices were hampered by Century 21's descriptions of the offices.  Century 21 states that "[t]here were two offices in St. Petersburg Beach" (Compl. ¶ 16), and later states that there were two offices in St. Petersburg (Bertet Supp. Aff. ¶¶ 10-11).  Century 21 also states that one office was located in Belleair. (Compl. ¶¶ 16, 32, 24; Bertet Aff. ¶¶ 25, 27; Bertet Supp. Aff. ¶ 14.)  According to the Franchise Agreements themselves, none of these statements is correct.  Rather, one office was in St. Pete Beach (not "St. Petersburg Beach") (Compl. Ex. A), another was in St. Petersburg (Compl. Ex. B), and the "Belleair" office was actually in Largo (Compl. Ex. E).

B. Commencement of the Franchise Agreements

Century 21 claims that all six Franchises Agreements were entered into on February 1, 1998 (Compl. ¶ 16; Bertet Aff. ¶ 12), but the Agreements themselves show otherwise.  The franchises at Office 0002 (St. Pete Beach), Office 0003 (St. Petersburg), and Office 0004 (Clearwater) were commenced on February 1, 1998.  (Compl. Exs. A-C.)  However, the franchise at Office 0005 (New Port Richey) was commenced on March 15, 1999 (Compl. Ex. D), the franchise at Office 0006 (Largo) was commenced on February 15, 1999 (Compl. Ex. E), and the franchise at Office 0007 (Tarpon Springs) was commenced on January 10, 2000 (Compl Ex. F).

---

[2] Based on Century 21's statement that no liquidated damages are owed for Office 0003 because that franchise was terminated by agreement of the parties (Bertet Supp. Aff. ¶ 24), and based on the termination agreement itself, which states that it pertains to the franchise located at 8601 4th Street, St. Petersburg, FL 33702 (Bertet Aff. Ex. B), the Court concludes that Office 0003 is the office located at 8601 4th Street in St. Petersburg.

NOT FOR PUBLICATION

Curiously, Century 21 appears to be aware of the actual commencement dates of the franchises at Offices 0005, 0006, and 0007, as it cites the correct dates when calculating liquidated damages for these offices in its supplemental papers.  (Bertet Supp. Aff. ¶¶ 21-23.)[3]  However, it does not acknowledge the inconsistency between these dates and its earlier statements (found in the Verified Complaint and original motion papers) that all of the franchises were commenced on February 1, 1998.

With the exception of their locations and their commencement dates, the terms of the Franchise Agreements were identical in all material respects.  (Compl. ¶ 16.)  Each Franchise Agreement had an expiration date of January 31, 2008.  (Compl. Exs. A-F.)  However, each of the six franchises was terminated before its scheduled expiration date.

C. Early Termination of the Franchise Agreements

*1. Office 0002*

As a result of Mills First's failure to operate the franchise, Century 21 terminated the franchise at Office 0002 sometime in 2007, though the exact date is unclear.  In its Verified Complaint and original motion papers, Century 21 alleges that Office 0002 was terminated on June 1, 2007.  (Compl. ¶ 30; Bertet Aff. ¶ 24.)  However, in its supplemental papers, Century 21 also alleges that Office 0002 was terminated on March 29, 2007.  (Bertet Supp. Aff. ¶ 19, Ex. H.) Finally, in its supplemental papers, Century 21 maintains that Office 0002 failed to pay its franchise fees from February 2006 to April 2007.  (Bertet Supp. Aff. ¶ 10.)  The June 1

---

[3] Despite its use of the correct commencement dates, Century 21's calculations of liquidated damages are infirm for other reasons.  See V.B.

NOT FOR PUBLICATION

termination date would make unpaid franchise fees through April 2007 improbable, as it is

unlikely that Mills First would fail to pay franchise fees from February 2006 through April 2007

and then elect to pay fees in May 2007 – particularly given Mills First's alleged pattern of

franchise abandonment.  The March 29, 2007 termination date would make unpaid franchise fees

in April impossible, as the franchise no longer existed in April.

Because Century 21 provides no original documentation regarding the termination of

Office 0002, the Court is unable to determine which of these dates is correct.  However, March

29, 2007 was the date alleged in the most recent papers submitted by Century 21 (Bertet Supp.

Aff. ¶ 19, Ex. H); the Court therefore deems the termination date for Office 0002 to be March 29,

2007.

*2. Office 0003*

As a result of a termination agreement executed by Century 21 and Mills First, Office

0003 was terminated as of October 13, 2006.  Century 21 states that this termination agreement

was executed "in or about May 2007" (Compl. ¶ 28; Bertet Aff. ¶ 22), presumably because it

transmitted a copy of the agreement to Sharon Mills on May 16, 2007 (Compl. Ex. H)**.**  Century

21 also maintains that Office 0003 failed to pay its franchise fees from March 2006 to April

2007.  (Bertet Supp. Aff. ¶ 11.)  However, the agreement itself states that it is effective as of

October 13, 2006.  (Compl. Ex. H; Bertet Aff. Ex. B.)  This would make unpaid franchise fees

from November 2006 to April 2007 impossible, as the franchise no longer existed during those

months.  Based on the termination agreement itself, the Court deems the termination date for the

Office 0003 franchise to be October 13, 2006.

-7-

NOT FOR PUBLICATION

*3. Offices 0004, 0005, 0006, and 0007*

By its own admission, Century 21 terminated the franchises at Offices 0004, 0005, 0006, and 0007 on August 21, 2007 (Compl. ¶ 34, Ex. J; Bertet Aff. ¶ 27, Ex. D; Bertet Supp. Aff. ¶¶ 21-23), yet Century 21 claims unpaid franchise fees for Offices 0004 and 0005 until September 2007 (Bertet Supp. Aff. ¶¶ 12-13).  Again, unpaid franchise fees during September would be impossible because the franchises no longer existed then.  Based on Century 21's own termination letters for these offices, the Court deems the termination date for the Offices 0004, 0005, 0006, and 0007 franchises to be August 21, 2007.

## III. Standard of Review

In granting a default judgment, a court should accept as true the well-pleaded allegations of the Complaint.  Ramada Worldwide, Inc. v. Benton Harbor Hari Ohm, L.L.C., Civ. No. 05-3452, 2008 U.S. Dist. LEXIS 63600 at *13 (D.N.J. July 31, 2008); Days Inn Worldwide, Inc. v. Mayu & Roshan, L.L.C., Civ. No. 06-1581, 2007 U.S. Dist. LEXIS 41997, at *8 (D.N.J. June 8, 2007).  However, the court must make "an independent inquiry into 'whether the unchallenged facts constitute a legitimate cause of action'" and "must make an independent determination" regarding questions of law.  Days Inn at *11.  Moreover, a court does not accept as true allegations pertaining to the amount of damages, and may employ various methods to ascertain the amount of damages due, including calculation based on figures contained in documentary evidence or affidavits.  Ramada at *13-14; Days Inn at *15-17.

This Court examines Century 21's allegations to determine whether they state causes of action for violation of the Lanham Act and for breach of contract, and whether Century 21 is

**NOT FOR PUBLICATION**

entitled to prevail on these causes of actions.  Based on its findings of liability, the Court

examines the papers submitted by Century 21 to determine the amount of damages owed by

Mills First.

## IV. Findings of Liability

### A. Lanham Act Violations

Century 21 alleges that Mills First's conduct with respect to Office 0004 (only) violated

the Lanham Act, a federal statute that "protects trademark owners against infringement and

unfair competition."  Ramada Worldwide Inc. v. Sayo, Inc., Civ. No. 05-5506, 2007 U.S. Dist.

LEXIS 96010, at *25 (D.N.J. July 10, 2007).  Century 21 maintains that, after the termination of

the Office 0004 franchise, Mills First continued to display signs containing Century 21 marks at

the Office 0004 location and Mills First sales agents continued to identify themselves as

affiliated with Century 21.  (Compl. ¶ 37; Bertet Aff. ¶ 30.)

*1. Inspection Report*

Century 21's October 7, 2008 inspection report stated that Century 21 signage remained

outside the office, but the inside of the office was vacant and devoid of Century 21 marks, the

Office 0004 telephone number was out of service, and www.c21millsfirst[.com] was offline.

(Bertet Aff. Ex. E.)  The report also listed three other websites that erroneously stated that certain

real estate agents were affiliated with Century 21 Mills First.  (Id.)  None of these three sites was

on a Century 21 domain or a Mills First domain, but were instead on the following domains:

incredibleagents.com, house-hunting.com, and tampabayshowcase.com.  (Id.)

*2. Section 32(a) of the Lanham Act*

NOT FOR PUBLICATION

Section 32 of the Lanham Act provides:

"[a]ny person who shall, without the consent of the registrant[,] use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive... shall be liable in a civil action by the registrant."

15 U.S.C. § 1114(a).  Century 21 alleges that Mills First's conduct with respect to Office 0004 violated Section 32(a) because Mills First "marketed and promoted... real estate services for the real estate brokerage offices through the unauthorized use of the Century 21 Marks, and such use caused and is likely to continue to cause confusion or mistake among prospective or actual customers."  (Compl. ¶ 44.)  However, Century 21's own inspection report on Office 0004 suggests otherwise.  An abandoned Mills First office with a lone Century 21 sign outside, an offline Mills First website, and three unofficial, third-party websites (which most likely generate their own content) that erroneously identified individual agents as affiliated with Century 21 Mills First are not likely to be the result of Mills First's alleged "market[ing] and promot[ion of] real estate services" through the use of Century 21 marks, and are certainly not "likely to cause confusion" regarding the real estate services provided by Century 21.  These factors simply do not create the impression that "the ex-[franchisee] is still connected with the [franchisor]," which is the kind of "fraud on the public" that Section 32(a) of the Lanham Act is intended to prevent. Days Inn, 2007 US Dist. LEXIS 41997, at *14 (quoting ITT Indus., Inc. v. Wastecorp, Inc., 87 F. App'x 287, 293 (3d Cir. 2004)).

NOT FOR PUBLICATION

Despite Century 21's naked, unsubstantiated statements that Mills First has violated Section 32(a), it has not shown the likelihood of confusion necessary to sustain a claim under this section.

*3. Section 43(a) of the Lanham Act*

Section 43(a) of the Lanham Act provides:

"[a]ny person who, on or in connection with any goods or services... uses in commerce any word, term, name, symbol... or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation... or as to the origin, sponsorship, or approval of... goods or services... shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act."

15 U.S.C. § 1125(a)(1)(A). Century 21 alleges that Mills First's conduct with respect to Office 0004 violated Section 43(a) because Mills First's use of Century 21 marks constitute "false designation of origin" and "false and misleading description [and] representation of fact," and "caused" and "are likely [] to cause" confusion, mistake, or deception regarding the real estate services of Century 21. (Compl. ¶ 46.)  Again, Century 21's own inspection report suggests otherwise.  The abandoned premises, the offline website, and the scattered claims of individual affiliation with Century 21 on unrelated websites are unlikely to cause confusion, mistake, or deception as to "the origin, sponsorship, or approval" of the services of Century 21 – particularly since Mills First is not actually operating a business at Office 0004 and is not offering any services whose origin, sponsorship, or approval may be subject to confusion.[4]

---

[4] By contrast, when an ex-franchisee is still operating its business, and is using the franchisor's marks in the operation of its business, this type of use is likely to cause confusion. See Days Inn Worldwide, Inc. v. BFC Mgmt., 544 F. Supp. 2d 401, 405-406 (D.N.J. 2008).

NOT FOR PUBLICATION

Despite Century 21's naked, unsubstantiated statements that Mills First has violated Section 43(a), it has not shown the likelihood of confusion necessary to sustain a claim under this section.  Moreover, Century 21 has failed to even allege that it has actually been damaged or is "likely to be damaged" by the situation of Office 0004, as required by Section 43(a).

*4. Section 43(c) of the Lanham Act*

Finally, Section 43(c) of the Lanham Act provides:

"[t]he owner of a famous mark that is distinctive... shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury. "[5]

15 U.S.C. § 1125(c)(1).  Section 43 defines "dilution by blurring" as "association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark."  15 U.S.C. § 1125(c)(2)(B).  Section 43 defines "dilution by tarnishment" as "association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark."  15 U.S.C. § 1125(c)(2)(C).

Century 21 claims that the situation of Office 0004 "caused and will continue to cause dilution and disparagement of the distinctive quality of the Century 21 Marks."  (Compl. ¶ 48.) However, the abandoned premises, the offline website, and the scattered claims of individual affiliation with Century 21 on unrelated websites are unlikely to cause dilution by blurring.  First, the lone Century 21 sign outside Office 0004 contains the Century 21 mark itself, not a similar

---

[5] The language that Century 21 quotes as the operative language of Section 43(c) (Compl. ¶ 47) is no longer in force, as that language was replaced by the Federal Trademark Dilution Act of 2006.  Pub. L. No. 109-312, 120 Stat. 1730.

**NOT FOR PUBLICATION**

mark that could impair the distinctiveness of the Century 21 mark.  Second, Mills First is not

actually operating a business at Office 0004, much less operating a business that uses the Century

21 mark; it therefore cannot use the mark in the operation of its business in a way that would

impair the distinctiveness of the Century 21 mark as it is used by Century 21.

The abandoned premises, the offline website, and the scattered claims of individual

affiliation with Century 21 on unrelated websites are also unlikely to cause dilution by

tarnishment.  Because Mills First is not operating a business at Office 0004 and is not using the

mark in the operation of a business, it is extremely unlikely that the public will associate Mills

First with Century 21 in a way that harms the reputation of Century 21.

Despite Century 21's naked, unsubstantiated allegations of dilution, it has not shown the

likelihood of association necessary to sustain a claim under this section.

With regard to the First Count of the Verified Complaint, which concerns Mills First's

use of Century 21 symbols and marks by Office 0004 after the termination of the franchise, the

Court finds that Century 21 has failed to state a cause of action under the Lanham Act, and is

therefore not entitled to monetary or injunctive relief under the Act.

B. <u>Audit Requirements</u>

Under Section 18(I) of the Franchise Agreements, each franchise must maintain its books

and records for three years following termination, and Century 21 is allowed to make a final

inspection and audit of these books and records to verify that the franchise has paid all fees owed

to Century 21.  (<u>See</u> Compl. Ex. A.)  Century 21 alleges that Mills First did not comply with this

requirement following the termination of the franchises.

NOT FOR PUBLICATION

As to the Second Count of the Complaint, the Court finds that Mills First must allow Century 21 to examine the books and records of the franchises to determine whether Century 21 is entitled to any unpaid fees or contributions of which it is unaware.  If, as a result of the audit, Century 21 discovers additional amounts owed by Mills First and not addressed in this Order, it may petition this Court for further relief.

C. <u>Breach of Contract</u>

*1. Failure to Pay Franchise Fees*

Under Section 8 of the Franchise Agreements, each franchise office was required to pay Century 21 a royalty fee equal to six percent of gross revenue earned from transactions involving the purchase, sale, lease, or rental of real estate.  (<u>See</u> Compl. Ex. A.)  Under Section 9 of the Franchise Agreements, each office was required to pay Century 21 a "National Advertising Fund ("NAF") fee equal to two percent of gross revenue as described in Section 8.  (Id.)  The Court refers to these two types of fees collectively as "franchise fees."

a. Office 0002

Century 21 maintains that Office 0002 failed to pay its franchise fees from February 2006 to April 2007.  (Bertet Supp. Aff. ¶ 10.)  Pursuant to its finding regarding the termination date of Office 0002, the Court finds that Mills First owes Century 21 franchise fees for this office for the period February 1, 2006 to March 29, 2007 only.

b. Office 0003

Century 21 maintains that Office 0003 failed to pay its NAF fees from March 2006 to April 2007. (Bertet Supp. Aff. ¶ 11.)  Pursuant to its finding of the termination date of Office

-14-

**NOT FOR PUBLICATION**

0003, the Court finds that Mills First owes Century 21 NAF fees for this office for the period March 1, 2006 to October 13, 2006 only.

c. Offices 0004 and 0005

Century 21 maintains that Offices 0004 and 0005 failed to pay their franchise fees from February 2006 to September 2007.  (Bertet Supp. Aff. ¶¶ 12-13.)  Pursuant to its finding of the termination date of Offices 0004 and 0005, the Court finds that Mills First owes Century 21 franchise fees for these offices for the period February 1, 2006 to August 21, 2007 only.

d. Office 0006

Century 21 maintains that Office 0006 failed to pay its franchise fees from February 2006 to August 2007.  (Bertet Supp. Aff. ¶ 14.)  Pursuant to its finding of the termination date of Office 0006, the Court finds that Mills First owes Century 21 franchise fees for this office for the period February 1, 2006 to August 21, 2007.

e. Office 0007

Century 21 maintains that Office 0007 failed to pay its NAF fees from February 2006 to August 2007.  (Bertet Supp. Aff. ¶ 15.)   Pursuant to its finding of the termination date of Office 0007, this Court finds that Mills First owes Century 21 NAF fees for this office for the period February 1, 2006 to August 21, 2007.[6]

---

[6] Century 21 also maintains that Office 0007 failed to pay charges on a Development Note executed by Mills First for sums it borrowed from Century 21, and that, pursuant to the terms of the Franchise Agreement, the amounts due under the Note were accelerated after the termination of the Agreement.  Bertet Supp. Aff. ¶ 15.  However, Century 21 makes this allegation only in its most recent supplemental papers (and not in its Verified Complaint or its original motion papers), and it has failed to include any documentation regarding this note or any discussion of the applicable terms of the Franchise Agreement.  The Court declines to make any

NOT FOR PUBLICATION

The amount of fees owed for each office is calculated in the "Damages" section (V.A).

*2. Early Termination and Liquidated Damages*

Section 19 defines early termination of the Franchise Agreements as "any termination of this Agreement by Franchisor 'for cause,' or any termination of this Agreement made by Franchisee prior to the Expiration Date for any reason." (See Compl. Ex. A.)   Section 19 also provides that, upon early termination of the Agreements, Mills First is required to pay Century 21 liquidated damages in the amount of "lost future profits."  Lost future profits is defined as the franchise fees (royalty fees and NAF fees) that the franchise office would have paid to Century 21 had their been no early termination, discounted by 8%.  The amount of these fees is the product of (1) the average monthly franchise fees that the office had been paying to Century 21 up until early termination, and (2) the months remaining between early termination and the scheduled expiration date.  Thus, an office that had been paying an average of $1,000 per month in fees and had terminated its franchise agreement 10 months before the expiration date would owe $10,000.  Discounted by 8%, the result would be $9,200.

a. Office 0002

Century 21 terminated Office 0002 because of Mills First's failure to operate it as a franchise.  (Compl. ¶ 30.)  Office 0002 was terminated "for cause" and ended in early termination under Section 19.  This Court finds that Mills First owes liquidated damages for this office as of its termination date, March 29, 2007, and that Mills First is obligated to pay Century

---

finding of liability or damages on the note.

**NOT FOR PUBLICATION**

21 for the lost profits of this office for the months between March 29, 2007 and January 31, 2008.

      b. Office 003

Century 21 terminated Office 0003 pursuant to a termination agreement executed by Mills First and Century 21, and Mills First owes no liquidated damages for the early termination of Office 0003.  (See Bertet Supp. Aff. ¶ 24.)

      c. Offices 0004, 0005, 0006, and 0007

Century 21 terminated Offices 0004, 0005, 0006, and 0007 because of Mills First's failure to pay franchise fees to Century 21 under the terms of the Agreements, Mills First's abandonment of the office premises, and Mills First's failure to report on closed transactions. (Compl. ¶¶ 32-34.)  These offices were terminated "for cause" and ended in early termination under Section 19.  This Court finds that Mills First owes liquidated damages for these offices as of their termination date, August 21, 2007, and that Mills First is obligated to pay Century 21 for the lost profits of each office for the months between August 21, 2007 and January 31, 2008.

      The amount owed for each office is calculated in the "Damages" section (V.B).

*3. Continued Use of Century 21 Marks*

      Century 21 claims that Mills First's conduct with respect to Office 0004 (see IV.A.1) violated Section 18C of the Agreements (see Compl. Ex. A), which provides that, following the termination of the Agreements for any reason, Mills First must immediately and permanently discontinue the use of all Century 21 marks.  (Compl ¶¶ 22, 37; Bertet Aff. ¶¶ 18, 30.)  Although

**NOT FOR PUBLICATION**

this claim is not specifically enumerated as a Count for relief in the Verified Complaint,[7] and is only included in Century 21's motion papers, this Court grants Century 21 relief for this claim. The Court finds that Mills First violated the terms of the Franchise Agreement and must immediately and permanently discontinue the use of all Century 21 marks.

## V. Damages

For each of the six offices, Century 21 seeks unpaid franchise fees plus interest. For five of the offices, Century 21 seeks liquidated damages for early termination of the Franchise Agreements. The Court considers each type of damages in turn.

### A. Franchise Fees

As discussed, Mills First failed to pay franchise fees to Century 21, as required by the Franchise Agreements. Mills First was required to make monthly payments of royalty fees and "National Advertising Fund ("NAF") fees for each office until the termination date of the franchise. The amounts due for each office are calculated based on materials provided by Century 21. (Bertet Supp. Aff. Exs. B-G.) Century 21 has failed to explain how it arrived at its calculations of the amounts of royalties and NAF fees due each month from each franchise office. However, for the purpose of deciding this motion, this Court accepts Century 21's claimed amounts of unpaid royalties and NAF fees for each office, as they are submitted in the form of a sworn affidavit from Jacqueline Bertet, a Century 21 corporate officer.

*1. Office 0002*

---

[7] The Complaint refers to this section of the Agreements under Count Five: Unjust Enrichment (Compl. ¶ 72), but it seeks damages rather than enforcement of the Agreement.

NOT FOR PUBLICATION

For Office 0002, Mills First failed to make royalty payments and NAF payments from February 1, 2006 until March 29, 2007, 2006; the total due for this period is $9,398.74.

*2. Office 0003*

For Office 0003, Mills First failed to make NAF payments from March 2006 to October 13, 2006; the total due for this period was $4,463.26.

*3. Office 0004*

For Office 0004, Mills First failed to make royalty payments and NAF payments from February 1, 2006 to August 21, 2007; the total due for this period was $9,580.64.[8]

*4. Office 0005*

For Office 0005, Mills First failed to make royalty payments and NAF payments from February 1, 2006 to August 21, 2007; the total due for this period was $11,428.75.

*5. Office 0006*

For Office 0006, Mills First failed to make royalty payments and NAF payments from February 1, 2006 to August 21 2007; the total due for this period was $6,710.87.

*6. Office 0007*

For Office 0007, Mills First failed to make NAF payments from February 1, 2006 to August 21 2007; the total due for this period was $6,854.00.

*7. Total Franchise Fees*

---

[8] The Court notes that, even assuming the accuracy of Century 21's statement that fees were due for September 2007 (see II.C.3), despite the August 21, 2007 termination of the franchise, the calculations it provided are still incorrect. Including the $379.00 it claims were due in September, the total unpaid fees for Office 0004 would have been $9,959.64 – not $10,338,64, as Century 21 claims. (Bertet Supp. Aff. ¶ 12, Ex. D.)

**NOT FOR PUBLICATION**

The total for unpaid franchise fees due from all offices is $48,436.26.   The Court does not award interest on this amount because the interest rate and calculations suggested by Century 21 are inaccurate.   Section 8B of the Franchise Agreement states that royalty fees "more than the (10) days late" shall bear interest, and Section 9B states that NAF fees "not received by the last day of the appropriate month" shall accrue interest.   (See Compl. Ex. A.)   Both sections state that the interest rate shall be "five (5) percentage points per annum higher than the 'prime rate' then currently established by Mellon Bank, N.A., Pittsburgh, PA."   (Id.)   This "then currently established" language suggests that the applicable interest rate is based on the rate established by Mellon Bank at the time the fees become overdue, e.g., 10 days late for royalty fees and after the last day of the month for NAF fees.

Century 21 states that it "attempted to determine the prime rate" established by Mellon Bank, but was "unable" to do so.   (Bertet Supp. Aff. ¶ 31.)   It therefore utilized a prime rate published in the Wall Street Journal rather than the rate established by Mellon Bank (id.), as required by the Agreements.   Moreover, the Wall Street Journal rate it used was untimely: that rate was current "[a]t the time of the original submission" (Id.), which presumably means the time of the submission of Century 21's motion papers in January 2008; it was not current at the time that the fees became overdue for each office, as required by the Agreements.   Because Century 21's interest calculations are based on a rate that does not conform with the requirements of the Franchise Agreements, this Court does not award interest on franchise fees.[9]

_____

[9] In addition, the Court notes that Century 21 did not bring this suit until April 2008, eight months after the August 2007 termination of the last four franchises.  Were this Court to award pre-judgment interest from the dates of termination until the original return date of a motion for

**NOT FOR PUBLICATION**

The total damages for unpaid franchise fees therefore remains $48,436.26.

B. <u>Liquidated Damages</u>

As discussed, Century 21 is entitled to liquidated damages for early termination of the franchise for all offices except Office 0003.  The amounts due for each office are calculated based on materials provided by Century 21.  For the purpose of deciding this motion, this Court accepts Century 21's claimed amounts of total fees, and therefore average fees, for each office, as they are submitted in the form of a sworn affidavit from Jacqueline Bertet, a Century 21 corporate officer.

*1. Office 0002*

The Court has determined that Office 0002 was terminated early on March 29, 2007.  <u>See</u> II.C.  Although Century 21 has contradicted itself regarding the actual termination date of Office 0002, all of the possible dates are in 2007, and it is therefore impossible that there were more than 13 months remaining between the termination date of Office 0002 and its scheduled expiration date of January 31, 2008.  The Court is puzzled by Century 21's claim that it is owed 34.16 months worth of lost profits on Office 0002 (Bertet Supp. Aff. ¶ 19), although it presumes that Century 21 derived this number from a chart that lists the expiration date of the franchise as January 31, 2010 (Bertet Supp. Aff. Ex. H).  This chart conflicts with the Franchise Agreement itself, which states that the expiration of the franchise is January 31, 2008 (Compl. Ex. A); it also conflicts with Century 21's own statement that the franchise commenced on February 1, 1998

---

judgment – or from September 15, 2008 until the return date of the motion (as Century 21 requests) – plaintiffs such as Century 21 would have an incentive to delay suit in order to ensure the accumulation of pre-judgment interest on amounts owed.

NOT FOR PUBLICATION

(Bertet Supp. Aff. ¶ 19) and was to last 10 years (Compl. ¶¶ 16-17; Bertet Aff. ¶ 13).  The Court

disregards this chart and Century 21's claim regarding the 34.16-month period, and finds that

there were 10.06 months remaining from March 29, 2007 to January 31, 2008.  The average

franchise fees for Office 0002 were $5,988.70 per month (Bertet Supp. Aff. ¶ 19, Ex. H), and this

amount multiplied by 10.06 is $60,246.32.  Discounted by 8%, the result is $55,426.62, the total

liquidated damages owed for Office 0002.[10]

*2. Office 0003*

There are no liquidated damages owed for Office 0003 because it was terminated by

mutual agreement and not subject to the early termination penalties of Section 19 of the

Franchise Agreements.

*3. Office 0004*

By Century 21's own admission, Office 0004 was terminated on August 21, 2007

(Compl. ¶ 34, Ex. J; Bertet Aff. ¶ 27, Ex. D), yet Century 21 contends that Office 0004 was

terminated on August 27, 2007 (Bertet Supp. Aff. ¶ 20).  Because either date would leave less

than 6 months until the scheduled expiration date of January 31, 2008, the court is puzzled by

Century 21's claim that it is owed 29.39 months worth of lost profits on Office 0004 (Bertet

Supp. Aff. ¶ 20, Ex. I), although it again presumes that Century 21 derived this number from an

erroneous chart that conflicts with the Franchise Agreement and Century 21's own statements.

---

[10] The Court notes that, even assuming the accuracy of Century 21's statement that there
were 34.16 months remaining until expiration, the calculations it provided are still incorrect.
Average monthly franchise fees ($5,988.70) multiplied by 34.16 yields a product of $204,573.99
and a discounted total of $188,208.07 – not $204,567.53 and $188,202.13, respectively, as
Century 21 claims.  (Bertet Supp. Aff. ¶ 19, Ex. H.)

NOT FOR PUBLICATION

(Compare Bertet Supp. Aff. Ex. I with Compl. ¶¶ 16-17, Ex. C; Bertet Aff. ¶ 13.)  The Court

disregards this chart and Century 21's claim regarding the 29.39-month period, and finds that

there were 5.35 months remaining from August 21, 2007 to January 31, 2008.  The average

franchise fees of Office 0004 were $4,706.58 per month (Bertet Supp. Aff. ¶ 20, Ex. I); this

amount multiplied by 5.35 is $25,180.20.  Discounted by 8%, the result is $23,165.79, the final

amount of liquidated damages owed for Office 0004.[11]

*4. Office 0005*

　　　Office 0005 was also terminated on August 20, 2007.  (Compl. ¶ 34, Ex. J; Bertet Aff. ¶

27, Ex. D.)  Given the scheduled expiration date of January 31, 2008, the Court is again puzzled

and now disturbed by Century 21's claim of the remaining months for which it is owed liquidated

damages – perhaps even more so in this instance, as Century 21 claims that there were 34.16

months remaining for Office 0005.  (Bertet Supp. Aff. ¶ 21.)  However, this was likely a

typographical error, as the chart on which Century 21's calculations are based actually states that

there were 29.39 months remaining.  (Bertet Supp. Aff. Ex. J.)  Yet the 29.39 figure is also

incorrect; as with Office 0004, it is based on an erroneous assumption that the franchise was to

end on January 1, 2010.  (Compare Bertet Supp. Aff. Ex. J with Compl. ¶¶ 16-17, Ex. D; Bertet

Aff. ¶ 13.)  The Court  disregards the 29.39-month figure and finds that there were 5.35 months

remaining from August 21, 2007 to January 31, 2008.  The average franchise fees of Office 0005

---

　　　[11]  The Court notes that, even assuming the accuracy of Century 21's statement that there
were 29.39 months remaining until expiration, the calculations it provided are still incorrect.
Average monthly franchise fees ($4,706.58) multiplied by 29.39 yields a product of $138,326.39
and a discounted total of $127,260.28 – not $138,334.71 and $127,267.93, respectively, as
Century 21 claims.  (Bertet Supp. Aff. ¶ 20, Ex. I.)

NOT FOR PUBLICATION

were $3,457.01 per month (Bertet Supp. Aff. ¶ 21, Ex. J), and this amount multiplied by 5.35 is $18,495.00.  Discounted by 8%, the result is $17,015.40, the final amount of liquidated damages owed for Office 0005.[12]

*5. Office 0006*

Office 0006 was also terminated on August 21, 2007 (Compl. ¶ 34; Bertet Aff. ¶ 27, Ex. D).  Given the scheduled expiration date of January 31, 2008, the court is again puzzled and disturbed by Century 21's claim that it is owed 29.39 months worth of lost profits on Office 0006 (Bertet Supp. Aff. ¶ 22, Ex. K), although it again presumes that Century 21 derived this number from an erroneous chart that conflicts with the Franchise Agreement and Century 21's own statements.  (Compare Bertet Supp. Aff. Ex. K with Compl. ¶¶ 16-17, Ex. E; Bertet Aff. ¶ 13.) The Court disregards this 29.39-month figure and finds that there were 5.35 months remaining from August 21, 2007 to January 31, 2008.  The average franchise fees of Office 0006 were $3,399.85 per month (Bertet Supp. Aff. ¶ 22, Ex. K), and this amount multiplied by 5.35 is $18,189.20.  Discounted by 8%, the result is $16,734.06, the final amount of liquidated damages owed for Office 0006.[13]

---

[12]   The Court notes that, even assuming the accuracy of Century 21's statement that there were 29.39 months remaining until expiration, the calculations it provided are still incorrect. Average monthly franchise fees ($3,457.01) multiplied by 29.39 yields a product of $101,601.52 and a discounted total of $93,473.40 – not $101,607.71 and $93,479.09, respectively, as Century 21 claims.  (Bertet Supp. Aff. ¶ 21, Ex. J.)

[13] The Court notes that, even assuming the accuracy of Century 21's statement that there were 29.39 months remaining until expiration, the calculations it provided are still incorrect. Average monthly franchise fees ($3,399.85) multiplied by 29.39 yields a product of $99,921.59 and a discounted total of $91,927,86 – not $99,927.77 and $91,933.55, respectively, as Century 21 claims.  (Bertet Supp. Aff. ¶ 22, Ex. K.)

NOT FOR PUBLICATION

*6. Office 0007*

Office 0007 was also terminated on August 21, 2007.  (Compl. ¶ 34; Bertet Aff. ¶ 27, Ex. D.)  Given the scheduled expiration date of January 31, 2008, the court is again puzzled and disturbed by Century 21's claim that it is owed 29.39 months worth of lost profits on Office 0004 (Bertet Supp. Aff. ¶ 23, Ex. L), although it again presumes that Century 21 derived this number from an erroneous chart that conflicts with the Franchise Agreement and Century 21's own statements.  (<u>Compare</u> Bertet Supp. Aff. Ex. K <u>with</u> Compl. ¶ 17, Ex. F; Bertet Aff. ¶ 13.)  The Court disregards this 29.39-month figure and finds that there were 5.35 months remaining from August 21, 2007 to January 31, 2008.  The average franchise fees of Office 0007 were $2,462.84 per month (Bertet Supp. Aff. ¶ 23, Ex. L), and this amount multiplied by 5.35 is $13,176.19.  Discounted by 8%, the result is $12,122.10, the final amount of liquidated damages owed for Office 0007.[14]

*7. Total Liquidated Damages*

The total liquidated damages is $124,463.97.  Century 21 is not seeking interest on liquidated damages.  (Bertet Supp. Aff. ¶ 34.)

## VI. Attorneys' Fees

In its January 8, 2009 Motion for Final Judgment and Permanent Injunction by Default, Century 21 sought $8,679.90 in attorneys' fees and costs (Bertet Supp. Aff. ¶ 36), a figure

---

[14] The Court notes that, even assuming the accuracy of Century 21's statement that there were 29.39 months remaining until expiration, the calculations it provided are still incorrect.  Average monthly franchise fees ($2,462.84) multiplied by 29.39 yields a product of $72,382.87 and a discounted total of $66,592.24 – not $72,387.39 and $66,596.39, respectively, as Century 21 claims.  (Bertet Supp. Aff. ¶ 23, Ex. L.)

**NOT FOR PUBLICATION**

derived from the affidavit of Jeffrey L. O'Hara, which stated that Century 21 had incurred

$7,724.70 in attorneys' fees and $955.20 in costs.  (O'Hara Aff. ¶¶ 7, 9.)  Although Section 20 of

the Franchise Agreement provides that Century 21 is entitled to fees and costs (see Compl. Ex.

A), Century 21's request for fees and costs is denied because the affidavit submitted by Mr.

O'Hara does not meet the requirements of Local Rule 54.2.

Rule 54.2 provides that affidavits submitted in support of requests for attorneys' fees and

costs must set forth (1) the nature of the services rendered, (2) a record of the dates of services

rendered, (3) a description of the services rendered on each of such dates by each person of that

firm, (4) the time spent in the rendering of such services, and (5) the normal billing rate of each

person rendering services.  L. Civ. R. 54.2(a).  Although Mr. O'Hara's affidavit describes the

nature of the services rendered, it fails to include any of the other required information, such as

dates, times, names, and billing rates.  To satisfy the requirements of Local Rule 54.2, Mr.

O'Hara must submit an affidavit containing a more thorough and more detailed description of the

fees and costs incurred.

Because Century 21's request for attorneys' fees and costs does not meet the requirements

of Local Rule 54.2, it is denied without prejudice.  Century 21 may file a new motion for

attorneys' fees and costs and support its motion with new affidavits.

### VII. Conclusion

For the foregoing reasons,

It is on this 26th day of October, 2009,

-26-

**NOT FOR PUBLICATION**

ORDERED that Plaintiff Century 21's Motion for Final Judgment and Permanent Injunction by Default is GRANTED insofar as:

Mills First is ordered to immediately and permanently discontinue all use of Century 21 names, marks, and symbols;

Mills First is ordered to allow Century 21 to examine the books and records of the six franchises to determine whether Century 21 is entitled to any unpaid fees or contributions of which it is unaware;

Century 21 is granted breach of contract damages in the amount of $172,900.23, which is comprised of $48,436.26 for unpaid franchise fees and $124,463.97 for liquidated damages.

ORDERED that Century 21's request for attorneys' fees and costs is DENIED without prejudice and with leave to refile.


                                        **s/ William H. Walls**
                                        United States Senior District Judge